**Michael BRUMER, Plaintiff,**

v.

**NATIONAL LIFE OF VERMONT, Paul Revere Life Insurance Co., and Provident Life and Accident Insurance Company, Defendants.**

**Civ. A. No. 91–2113.**

United States District Court, E.D. New York.

Jan. 24, 1995.

Harold Skovronsky, Brooklyn, NY, for plaintiff.

Evan L. Gordon, New York City, for Nat. Life of Vermont.

John Lobosco, Lane & Mittendorf, New York City, for Paul Revere Life Ins. Co. and Provident Life and Acc. Ins. Co.

## MEMORANDUM AND ORDER

TRAGER, District Judge:

Plaintiff, Michael Brumer, purchased disability insurance policies from three different insurers, including the movant National Life of Vermont ("NLV"). The three occupational disability policies purchased from NLV provide for benefits to be paid in the event Brumer should become totally or partially disabled. Total disability is defined in the policies in question as an inability of the insured to engage in his or her "occupation." "Occupation" is defined therein as the actual duties a. claimant performed "at the time such disability begins." Pl. 3(g) Stat. at Para. 2. Plaintiff, who claims to be totally disabled, filed this action after the defendants denied his claim for benefits under the policies. Defendant NLV has moved for summary judgment.

Viewing the evidence in a light most favorable to the plaintiff, plaintiff is not entitled to receive the disability payments he claims under the three policies in question. Plaintiff alleges that he is disabled because he is no longer able to perform podiatric surgery. Although there are many factual issues in dispute, for purposes of this motion, there is one fact as to which I find there is no genuine dispute: plaintiff was not performing podiatric surgery for at least thirteen months prior to January 1991, the date he claims as the onset of his disability. Accordingly, he was not disabled within the terms of occupational disability policies which define "occupation" as the pursuit in which a claimant was engaged "at the time [his] disability beg[a]n.". Consequently, defendant's motion for summary judgment is granted.

### Facts

The following facts are not in dispute. Plaintiff was engaged in practicing podiatric medicine from 1975 until 1989. He purchased a long-term disability insurance policy from the defendant in 1976, and two additional policies in 1981 and 1984. Sometime in 1988, plaintiff organized a group of podiatric clinics in which a number of other podiatrists are employed. In time, income from his management of this growing number of clinics came to represent approximately eighty percent of his annual income.

In 1989, the New York State Board of Regents charged plaintiff with a number of offenses including performance of needless surgery and tests, insurance fraud, and misleading advertising. The charges were ultimately sustained, and he was suspended from the practice of podiatric medicine for a period of eleven months. *In the Matter of Lawrence Klein, et al.*, 167 A.D.2d 625, 562 N.Y.S.2d 856 (1990). During this period of suspension from practice, plaintiff developed a medical condition known as "central serous retinopathy" which produced a blind spot in his left eye. Pl. 3(g) Stat. at Para. 7. Plaintiff claims the condition initially corrected itself, but it reappeared in November 1990, just prior to the time his suspension was lifted on November 25th. (Brumer Dep. at 68.) From that time onward, while plaintiff's visual impairment improved somewhat, it never improved to the point that he could perform podiatric surgery (*id.* at 68–70). Approximately eight weeks later, on January 26, 1991, plaintiff was diagnosed with micropsia, a condition caused by accumulation of scar tissue that results from a retinal rupture. This condition caused distortion in the vision of his left eye. *Id.* at 68–76. The parties concede that the visual impairment is permanent.

During the period of his suspension and after his visual disorder first manifested itself, Brumer continued administering his podiatric clinics and earned in excess of six-hundred thousand dollars from this endeavor

in that year. When his license to practice was reinstated, he did not return to the practice of podiatric surgery. He asserts that after his reinstatement he examined patients and scheduled some of them for surgery in March 1991, in the expectation that his eyesight would improve as it had once before. *Id.* at 72–76. During this period, he continued to manage his podiatric clinics.

After plaintiff's left eye impairment was diagnosed as a permanent disorder, he filed for benefits under the long-term disability insurance policies issued by the defendants on February 24, 1991. His doctor reported on the disability claim form which was filed with NLV that the vision in plaintiff's left eye was 20/50. Plaintiff's doctor went on to state that Brumer is disabled to the extent he "feels he cannot function as a physician" with that degree of impairment. Plaintiff's doctor did not offer his own opinion on the question whether plaintiff's condition is objectively so serious that he is precluded from practicing podiatric surgery, but for the purposes of this motion, we shall assume that he is unable to perform podiatric surgery. To this day, plaintiff continues to devote substantially all of his time to managing his podiatric clinics and maintains that he is unable to resume his practice of podiatric surgery.

The defendant denied plaintiff's claim that he had become totally disabled on the ground that to qualify the claimant would have to be completely unfit to perform his occupation as that term is defined by the policy. "Occupation" is defined in the policies in question to mean the occupation the insured was engaged in "at the time such disability begins." Defendant asserts that at the time plaintiff claims was the onset of his visual impairment, claimant's occupation was not solely that of a surgeon. During the period of plaintiff's suspension from practice, when he experienced the first manifestation of the illness that caused his disability, he had been working exclusively as an administrator, a calling his visual impairment does not now prevent him from performing. It is defendant's position that viewing the facts in a light most favorable to the plaintiff, Brumer had never devoted himself exclusively to performing surgery and, consequently, plaintiff's occupation should be categorized as that of a medical administrator who occasionally performed surgery. Since plaintiff is able to administer his chain of clinics, he is not totally disabled from continuing to perform the occupation in which he was engaged "at the time such disability begins," i.e., that of functioning as a medical administrator and a podiatrist. Plaintiff's response is that his managerial role should be viewed as peripheral to what he claims to be his real occupation.

## Discussion

Jurisdiction over this action arises under 28 U.S.C. § 1332. As this is a diversity action, the court is bound to apply the substantive law of State of New York. Under New York law, in cases where the terms of the policy are clear and unambiguous, "rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts. When the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense." *McGrail v. Equitable Life Assur. Soc'y,* 292 N.Y. 419, 55 N.E.2d 483 (1943); *Leibowitz v. Mut. of Omaha,* 71 Misc.2d 838, 337 N.Y.S.2d 314 (Civ.Ct.1972). While the word "disability" may have different meanings depending upon the context in which the term is used, the definition set out in the insurance policies in question is clear and unambiguous and, therefore, binding on the parties. *Kunstenaar v. Conn. Gen. Life Ins. Co.,* 902 F.2d 181, 184 (2d Cir.1990).

For plaintiff to prevail, he must establish that he has become totally disabled from continuing to perform the occupation in which he was engaged prior to the onset of his visual impairment. While the 1976 and 1981 policies do not explicitly define the precise degree of visual impairment that constitutes a total disability, New York courts have consistently held claimants are totally disabled when they are prevented from performing the material and substantial responsibilities of their jobs. *McGrail,* 292 N.Y. 419, 55 N.E.2d at 486–87; *Matza v. Empire State Mut. Life Ins. Co.,* 50 A.D.2d 554, 375 N.Y.S.2d 578 (1975); *see also, Franklin Life Ins. Co. v. Burgess,* 219 Ark. 834, 245 S.W.2d

210, 214 (1952); *Pacific Mut. Life Ins. Co. v. McCrary,* 161 Tenn. 389, 32 S.W.2d 1052 (1930). *See generally,* E.L. Kellett, Annotation, *Insurance: "Total Disability,"* 21 A.L.R.3d 1155 (1968). The 1984 policy in issue before the court explicitly incorporates the legal standard exemplified in these cases, for it provides that in order to be considered disabled, a claimant must be unable "to perform the material and substantial duties of the insured's occupation." Def. Exh. A. To defeat defendant's motion for summary judgment, plaintiff must establish that practicing surgery constituted a material and substantial part of his responsibilities at the time he became disabled. Accordingly, plaintiff maintains that prior to the onset of his visual impairment he was "actively engaged in the practice of surgery," a claim that the defendant disputes. Pl. 3(g) Stat. Para. 1. But what is not disputed is that while plaintiff may have scheduled patients for surgical procedures during the eight weeks after reinstatement of his medical license, the time during which he claims to have become disabled, he admits he did not actually perform any surgery during that period, and, indeed, also concedes that his eyesight during this entire period was so compromised that he was unable to perform podiatric surgery. Brumer Dep. 72–76.

The determination whether a particular injury renders a claimant disabled from performing the material and substantial duties of his or her occupation depends on the nature of a claimant's particular occupation. Arthritis will disable a pianist, but perhaps not an opera singer or a museum curator. *See Aetna Life Ins. Co. v. Spencer,* 182 Ark. 496, 32 S.W.2d 310 (1930) ("Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged."). When faced with a claimant who had been engaged in diverse activities, a court must first determine whether that claimant was engaged in a single occupation that required the performance of many duties, or whether the claimant was actually engaged in more than one occupation. A claimant who performed duties of both a clerk and a manager prior to his injury, for example, was considered to be engaged in a single occupation with many duties. *Burgess,* 245 S.W.2d at 210 (Ark.1952); *cf. Matza,* 375 N.Y.S.2d at 578.

Certainly, there are instances in which the practice of surgery will be considered a separate occupation from that of practicing medicine. Thus, an internist who practiced both surgery and internal medicine was considered to be engaged in two separate occupations, that of a physician and of a surgeon. *Aetna Life Ins. Co. v. Orr,* 205 Ark. 566, 169 S.W.2d 651 (1943). However, an osteopath who occasionally performed minor surgery was considered to have been working in a single profession and, despite his inability to continue to perform surgery, he was not disabled. *DiTommaso v. Union Cent. Life Ins. Co.,* 1991 WL 249977 1991 U.S.Dist. LEXIS 17079 (E.Pa. November 22, 1991). The reasoning of the *DiTommaso* court is that to determine a claimant's occupation at the time of a disability's onset, it is necessary to ascertain how the claimant was earning his "primary living" at the applicable time. That court considered that the osteopath's practice of surgery was peripheral to his other functions and, accordingly, classified him a physician.

The Second Circuit, applying New York law, has held that a claimant who purchased an occupational disability policy which insured him against the inability to practice as a "physician and a surgeon," and who, for a considerable time prior to the onset of his disability, was exclusively engaged in practicing surgery, was totally disabled within the meaning of the disability policy there in issue though he retained a residual capacity to practice as a physician. *Dixon v. Pacific Mut. Life Ins. Co.,* 268 F.2d 812 (2d Cir. 1959), *cert. denied,* 361 U.S. 948, 80 S.Ct. 403, 4 L.Ed.2d 381 (1960). By devoting himself exclusively to the practice of surgery for almost two decades, the claimant in *Dixon* had become a specialist in surgery, and that specialty was considered a separate occupation distinct from the general practice of medicine. *Id.* at 815. Similarly, the New York Court of Appeals upheld a finding of total disability for an OB/GYN physician who later was employed as the director of a family planning clinic. The jury's finding that

the plaintiff was totally disabled from performing the duties of his occupation after suffering a heart attack was sustained notwithstanding the fact that as the clinic's director, he performed some of the same tasks an OB/GYN physician would perform at a salary comparable to that he had earned prior to the onset of his illness. Management of the family planning clinic was considered an occupation distinct from that of an OB/GYN physician because his responsibilities at the clinic did not "involve any substantial part of the ordinary duties of his former occupation." *Niccoli v. Monarch Life Ins. Co.*, 70 Misc.2d 147, 332 N.Y.S.2d 803 (Sup. Ct.1972), *aff'd*, 45 A.D.2d 737, 356 N.Y.S.2d 677 (1974), *aff'd* 36 N.Y.2d 892, 372 N.Y.S.2d 645, 334 N.E.2d 594 (1975). These cases would indicate that management of a healthcare facility, even where that position requires performance of tasks only a physician may perform, including some of the same chores as the physician's prior responsibilities, may well constitute an occupation separate and apart from that of a practitioner of medicine or surgery.

A doctor who maintained both a private practice and worked as a professor of ophthalmology was held to be engaged in a single occupation, and that doctor's inability to continue his private practice did not render him totally disabled under the terms of a disability policy that required that a claimant be disabled from performing "any and every duty of his occupation." *Takerta v. Nationwide Mut. Ins. Co.*, 91 A.D.2d 568, 457 N.Y.S.2d 53 (1982), *aff'd* 59 N.Y.2d 743, 463 N.Y.S.2d 441, 450 N.E.2d 247 (1982). This is not the standard that must be applied in a case, such as this one, involving an inability to perform the substantial and material tasks required by a claimant's prior occupation.

Defendant NLV has failed to submit any evidence in support of its motion with respect to the various duties performed by the plaintiff in the period just prior to the onset of his disability. Were it established that Dr. Brumer was actively engaged in more than the management of his podiatric clinics, he might be considered to have a separate occupation as a manager of clinics and, in addition, another occupation as a doctor of podiatric medicine and a surgeon. Were it established that the extent of plaintiff's managerial duties were such that operation of his clinics was a separate occupation, he would not be totally disabled under the policies in issue, regardless of an inability to continue to perform surgery. *See Orr*, 169 S.W.2d at 651. Because plaintiff is able to function in his managerial occupation, an inability to perform surgery would not render him totally disabled. Alternatively, were one able to find that the plaintiff's managerial activities were peripheral or incidental when considered in light of the medical or surgical tasks he performed, the court would have to find that he did not have a separate occupation as a medical administrator. On the present state of the record, however, the court can make no finding on the question whether plaintiff was engaged in two separate occupations. It will, therefore, be assumed that his administration of podiatric clinics was an investment or a separate occupation.

Still, whether or not plaintiff was engaged in a separate occupation as a medical administrator, he cannot succeed unless he is able to establish that the practice of podiatric surgery constituted a material and substantial part of the role he performed at the time of the onset of his visual impairment. The plaintiff has failed to demonstrate that this is the case.

The onset of plaintiff's disability occurred either during the eleven month period that his license was suspended or, as plaintiff would have it, during the period between the time of his reinstatement and the date on which he filed a claim with the defendant claiming that he had become permanently disabled.

If the onset of plaintiff's disability occurred during the period that his medical license was suspended, he would not be entitled to receive disability payments pursuant to the terms of the policies in question because his occupation at the time the disability arose was not that of a surgeon or even a physician. "It is a general rule that disability insurance policies ... provide coverage for factual disabilities ... and not legal disabilities." *See Goomar v. Centennial Life Ins. Co.*, 855 F.Supp. 319 (S.D.Cal.1994). Con-

cededly, plaintiff was not engaged in the practice of podiatric surgery during the period that he was suspended from practice and the insurance policies in question condition benefits on an inability to perform tasks which the claimant was engaged in at the time the disability arose. In my view, plaintiff's deposition establishes the compelling inference that the disability occurred during the period of plaintiff's suspension from practice or legal liability. Strangely, though, defendant does not base its motion on this basis. The reason for this probably lies in the fact that plaintiff lists the onset of disability as January 26, 1991. At trial, this would hardly be sufficient to make a jury question of the issue in the face of plaintiff's admissions in his deposition.

Nevertheless, even if I assume that the onset of his disability occurred between the time his license to practice was reinstated and the time he filed his disability claim with NLV, he still cannot prevail. Between the end of his legal disability (November 25th) and the definitive diagnosis of micropsia (January 28th), the fact remains that plaintiff performed no podiatric surgery during the 8½-week period; at most, he claims to have scheduled patients for surgery for March, although he concedes that at no point between November 25, 1990, and January 28, 1991, was he able to perform podiatric surgery.

Thus, the plaintiff has not even made a minimal affirmative showing that a material and substantial portion of the work he performed during the period prior to the date he alleges he became disabled included the practice of podiatric surgery. Whatever medical tasks he performed were limited to examination of patients for surgery and the scheduling them for surgery—tasks which he can perform until this day. Certainly, plaintiff would not claim that examining patients and scheduling them for surgery is the same as performing podiatric surgery. And even if these tasks constituted the practice of "podiatric surgery," plaintiff is still able to perform them.

Inasmuch as plaintiff admits that his visual impairment precluded him from performing podiatric surgery during his postsuspension period, and since it is conceded that the last time plaintiff actually performed surgery was no less than thirteen months prior to the time he claims he became disabled, it follows that podiatric surgery was not a material and substantial part of his occupation "at the time [his] disability beg[a]n" in January 1991. Plaintiff, therefore, is not entitled to the disability payments he claims under the three policies at issue. Defendant NLV's motion for summary judgment is granted.