Paul SHAPIRO, Plaintiff–Appellee–Cross–Appellant,

v.

BERKSHIRE LIFE INSURANCE COMPANY, Defendant–Appellant–Cross–Appellee.

No. 1583, Dockets 99–7980, 99–7999.

United States Court of Appeals, Second Circuit.

Argued April 25, 2000

Decided May 12, 2000

Wylie M. Stecklow, New York, N.Y. (Joshua Skillman, on the brief), for Plaintiff–Appellee–Cross–Appellant.

George Berger, New York, N.Y. (Bruce J. Turkle, Phillips Nizer Benjamin Krim & Ballon LLP, New York, NY, on the brief), for Defendant–Appellant–Cross–Appellee.

Rhonda D. Orin, Washington, DC (Eugene R. Anderson, Anderson Kill & Olick, L.L.P., Washington, DC, and Amy R. Bach, Mill Valley, CA, on the brief), for Amicus Curiae United Policyholders.

Before: JACOBS, LEVAL and SACK, Circuit Judges.

JACOBS, Circuit Judge:

Paul Shapiro, a licensed dentist, brought this diversity action against Berkshire Life Insurance Co. ("Berkshire") contesting Berkshire's denial of his claim for total disability benefits. Berkshire appeals from the judgment of the United States

District Court for the Southern District of New York (Schwartz, *J.*) awarding summary judgment in Shapiro's favor on his claim for total disability benefits against Berkshire. Shapiro cross-appeals the court's grant of summary judgment in favor of Berkshire on his claim under § 349 of the New York General Business Law. We affirm.

## BACKGROUND

### A. *The Insurance Contracts*

On November 1, 1990, Berkshire issued a Disability Income Insurance Policy, which provided a monthly $3,100 benefit in the event of Shapiro's total disability (the "1990 policy"). On November 1, 1995, Berkshire issued a second, identical policy, which provided Shapiro an additional $1,000 monthly benefit (the "1995 policy").[1]

The policies define "total disability" as "the inability to perform the material and substantial duties of your occupation," and "your occupation" is limited to "the occupation you are engaged in immediately preceding the onset of disability." In another clause, the policies also provide benefits for residual disability, and define it: "Residual disability means that due to injury or sickness you are unable: (1) to do one or more of the substantial and material duties of your business or profession; or (2) to perform your duties for the length of time that they usually require." The insured is ineligible for residual disability benefits unless he has suffered a 20 percent drop in income as a result of the disability.

### B. *Shapiro's Responsibilities*

Shapiro has been a licensed dentist since 1981. In 1988, he opened his own practice called Park South Dental. In that office, patients were treated by Shapiro as well as by another full-time dentist, a periodontist and an orthodontist employed by Shapiro. Shapiro also owns North Hill Dental, a one-dentist office at which Shapiro treated patients only rarely. Shapiro is also the 44 percent owner and President of Sharraty Properties, Inc. ("Sharraty"), a for-profit corporation he founded with his brother-in-law, Dr. Monte Ezratty, to provide dental assistants, receptionists and clerical personnel for their offices.

Shapiro testified that before the onset of his disability he worked four or five days a week for a total of 40 to 45 hours. In 1995, the year before he became disabled, Shapiro saw nine to eleven patients a day, and performed an average of 275 procedures per month.

In addition to this dentistry work, Shapiro also spent between one and a half and four hours per week attending to various administrative and managerial duties related to Park South Dental, North Hill Dental and Sharraty.[2] Shapiro's non-dentistry responsibilities included, *inter alia,* personnel decisions, staff evaluations, staff meetings, consultations with his office manager on major equipment purchases and difficult billing disputes, troubleshooting the computer, and insurance and health plan proposal reviews.

### C. *Shapiro's Disability & Berkshire's Denial of His Claim*

In December 1995, Shapiro concluded that progressive skeletal illnesses (osteoarthritis and spondylosis of the elbow, neck and other joints) had left him medically unable to perform "chair dentistry," which is the sum of procedures involved in treating dental patients in the dentist's chair. Shapiro stopped treating patients on January 30, 1996. The parties agree that this event marked the "onset of [Shapiro's] disability" within the meaning of the insurance contracts.

---

**1.** The 1990 policy and the 1995 policy will be referenced collectively as the "policies" or the "insurance contracts."

**2.** Shapiro testified that his "nondental duties" at Sharraty and Park South Dental were "commingled."

On March 26, 1996, Shapiro filed his claim for total disability benefits. Berkshire investigated the claim, agreed that Shapiro was unable to perform chair dentistry, and undertook to pay total disability benefits for a limited time only, while Shapiro recovered from arm surgery, after which time, benefits could be paid only under the "residual disability" provisions of the policies. Berkshire's coverage position was that Shapiro's occupation immediately preceding the onset of his disability was as an administrator and manager of his various dental practices as well as a practitioner of chair dentistry; because the disability did not prevent Shapiro from doing his administrative or managerial work, Berkshire reasoned, Shapiro did not satisfy the policies' definition of total disability: "the inability to perform the material and substantial duties of your occupation."

### D. Procedural History

Shapiro brought this diversity action against Berkshire, alleging, *inter alia*, breach of contract and deceptive business conduct in violation of § 349 of the General Business Law of New York. The parties cross-moved for summary judgment. The district court granted summary judgment in favor of Shapiro on his breach of contract claim. As to the § 349 claim, the court concluded there was no violation and granted summary judgment in favor of Berkshire. Berkshire appeals and Shapiro cross-appeals.

## DISCUSSION

The substantive law of New York controls this diversity case. *See GNOC, Corp. v. Endico*, 876 F.2d 1076, 1078 (2d Cir. 1989). We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir.1999).

### A. The Contract Claim

Under New York law, Shapiro bears the burden of proving that he is totally disabled within the meaning of the policies. *See Goell v. United States Life Ins. Co.*, 269 A.D. 573, 55 N.Y.S.2d 732, 732–33 (1st Dep't 1945) (per curiam). The definition of total disability in Berkshire's policies tracks the standard articulated by the New York courts: "[A] claimant is 'totally disabled' when he or she is no longer able to perform the 'material' and 'substantial' responsibilities of his or her job." *Klein v. National Life of Vt.*, 7 F.Supp.2d 223, 227 (E.D.N.Y.1998) (Trager, J.) (citing, *inter alia, McGrail v. Equitable Life Assurance Soc'y*, 292 N.Y. 419, 425–26, 55 N.E.2d 483 (1944)). The coverage question entails a "fact-oriented, functional approach that look[s] to the professional activities in which the insured was regularly engaged at the time of the onset of the insured's disability." *Id.*

After reviewing the record, we conclude that the district court properly granted summary judgment in Shapiro's favor on the breach of contract claim because in the relevant period Shapiro's occupation was that of a dentist. It is uncontested that he spent the vast majority of his time performing chair dentistry. Viewing the evidence in the light most favorable to Berkshire, Shapiro's administrative duties consumed no more than four of his forty working hours per week: 90 percent of his time was spent fixing the teeth of patients and 10 percent on non-dentistry duties. He saw several patients every day, four or five days a week. His office manager described his schedule as being "booked every day" with patients. Shapiro was thus regularly engaged in chair dentistry at the time of the onset of his disability. His administrative work was incidental to his material and substantial duties as a full-time dentist. *See Brumer v. National Life of Vt.*, 874 F.Supp. 60, 64 (E.D.N.Y.1995) (Trager, J.) ("[W]ere one able to find that the plaintiff's managerial activities were peripheral

or incidental when considered in light of the medical or surgical tasks he performed, the court would have to find that he did not have a separate occupation as a medical administrator."), *aff'd sub nom. Brumer v. Paul Revere Life Ins. Co.*, 133 F.3d 906 (2d Cir.1998) (unpublished summary order).

Berkshire relies primarily on *Klein* and *Brumer*, and argues that Shapiro, like the two podiatrist partners in those cases, is not entitled to total disability benefits because of his continued ability to perform administrative duties. On the whole, however, *Klein* and *Brumer* support Shapiro's argument, because the plaintiff in neither case could make a credible claim of being a full-time podiatrist. Klein spent (at most) 24 percent of his time performing (or assisting with) a total of 251 surgeries in the thirteen months preceding his disability. *See Klein*, 7 F.Supp.2d at 229–30. The bulk of his time was spent operating and managing his six podiatric clinics. Brumer performed *no* podiatric surgery in the year preceding the onset of his disability, because (for all but the final eight weeks of that year) his podiatry license was suspended. *See Brumer*, 874 F.Supp. at 61–62. Thus Klein and Brumer were predominantly administrators and managers. *See, e.g., Klein*, 7 F.Supp.2d at 227 ("[T]he record is clear that [immediately preceding onset of disability] plaintiff was predominantly engaged in operating and managing his podiatric clinics while practicing, at most, a minimal amount of podiatric surgery.").

▮ In the period relevant to this claim, Shapiro devoted 90 percent of his full-time working hours to treating patients, and performed 275 procedures per month. Berkshire emphasizes, however, that the onset of Shapiro's disability caused no change in the gross revenues of his three businesses.[3] We reject this argument for three reasons:

(i) It is well-settled in New York that "occupational disability policies are designed to indemnify against loss of capacity to work, not against loss of income." *Blasbalg v. Massachusetts Cas. Ins. Co.*, 962 F.Supp. 362, 368 (E.D.N.Y. 1997). "[R]ecovery will not, therefore, be precluded even if plaintiff were to earn a larger income from his new occupation." *Id.; see also Godesky v. First Unum Life Ins. Co.*, 239 A.D.2d 547, 658 N.Y.S.2d 970, 971 (2d Dep't 1997); *Niccoli v. Monarch Life Ins. Co.*, 70 Misc.2d 147, 332 N.Y.S.2d 803, 805 (Sup.Ct.1972), *aff'd*, 45 A.D.2d 737, 356 N.Y.S.2d 677 (2d Dep't 1974), *aff'd*, 36 N.Y.2d 892, 372 N.Y.S.2d 645, 334 N.E.2d 594 (1975).

(ii) Although earnings may have some bearing on the question of a policyholder's capacity to work, the appropriate inquiry in this case concerns net income of the individual, rather than his gross revenue (much less the gross revenue of his business). An individual whose sole occupation had been the practice of chair dentistry could suffer total disability without losing a cent of *gross* revenue simply by hiring a substitute dentist to treat his patients. Here, the record evidence shows that Shapiro's *net* income *decreased* following the onset of his disability. This fact thus tends to support Shapiro's argument that he was, in fact, a dentist.

(iii) The stability of gross revenues cited by Berkshire does not tend to refute the idea that Shapiro was a full-time dentist because Shapiro in fact hired a dentist to replace himself.

\* \* \* \* \* \*

At some point, a medical entrepreneur's administrative and managerial responsibilities may well become the material and substantial duties of the insured's occupation. But we need not decide where to fix that point in order to resolve this appeal.

---

3. In mid–1997 (well after the onset of Shapiro's disability), Shapiro sold North Hill Dental and subsequently purchased the Elgar Dental practice. Shapiro never treated any patients at Elgar Dental.

Immediately preceding the onset of his disability, Paul Shapiro was a dentist. Because his disability prevents him from performing the material and substantial duties of that occupation, he is entitled to total disability benefits under the insurance contracts.

### B. *The § 349 Claim*

■■■ Section 349 of the General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a) (McKinney 1988). At the threshold, a plaintiff must demonstrate that the § 349 claim implicates "consumer oriented" conduct by the defendant. *Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 704 N.Y.S.2d 177, 182, 725 N.E.2d 598 (1999). Under New York law, a deceptive act or practice "that ha[s] 'a broader impact on consumers at large'" meets this threshold test, but "a private contract dispute as to policy coverage" does not. *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741 (1995)). If the plaintiff shows that the conduct is consumer-oriented within the meaning of the statute, the plaintiff must then show "that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Id.* at 183 (citation and internal quotation marks omitted). A "deceptive act or practice" has been defined as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers'*, 623 N.Y.S.2d at 533, 647 N.E.2d 741.

The district court dismissed Shapiro's § 349 claim on the ground that there is no evidence that the conduct alleged was consumer-oriented or that it was deceptive. Shapiro argues that the court erred by ruling that consumer-oriented conduct required proof of a routine or pattern of conduct. We need not decide whether the district court's ruling as to consumer-oriented conduct was erroneous because, even assuming that Shapiro met that threshold test, his § 349 claim was properly dismissed for insufficient evidence that Berkshire had engaged in conduct "that is deceptive in a material way." *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763 (1995).

■■■ On appeal, Shapiro appears to raise two theories of deceptive conduct. Neither is sufficient to survive Berkshire's motion for summary judgment.

(i) Shapiro argues that the marketing of the policies was deceptive because the "surgeon example" was used as a marketing ploy. He claims that a Berkshire salesman told Shapiro that a surgeon disabled from performing surgery would receive benefits for total disability even if he was still able to practice general medicine, because the occupation would be considered to be "surgeon" rather than "doctor." That example tracks the ruling of this Court in *Dixon v. Pacific Mut. Life Ins. Co.*, 268 F.2d 812 (2d Cir.1959), which held that an insurance policy like Shapiro's provided coverage for a surgeon who could no longer perform surgery even though he was still able to practice general medicine. *See id.* at 815–16.

But Berkshire's use of the surgeon example was not deceptive because it is inapposite to Shapiro's § 349 claim. Berkshire's denial of coverage in this case did not run counter to *Dixon* and the "surgeon example," in which the premise was that the policyholder was occupied exclusively as a surgeon *before* the onset date, and the coverage principle was that total disability benefits are payable notwithstanding the claimant's ability to perform *other* full-time work thereafter. Berkshire's denial of Shapiro's claim was premised on its conclusion that he was a medical entrepreneur before the onset date, and therefore that he worked at the same occupation before and after the claimed onset of disability,

a finding that if true would defeat Shapiro's claim under *Dixon*.

(ii) Shapiro alleges that Berkshire failed to make a sufficient investigation of his total disability claim before denying it. But the record reflects that Berkshire provided Shapiro with standard claim forms, which included questions about Shapiro's occupation, the duties he was able to continue performing, and the time he spent on those duties. Furthermore, a Berkshire investigator met with Shapiro to discuss his claim, and later summarized their conversation in a memorandum. Perhaps Berkshire could have investigated Shapiro's claim further; and if it did so Berkshire may have realized that Shapiro's occupation was dentistry. However, an insurer's denial of a claim is not deceptive simply because it is mistaken. We find no evidence in the record that Berkshire "sold disability insurance it never intended to provide." *DiDonato v. INA Life Ins. Co.*, No. 99 CIV. 470(JSM), 1999 WL 436444, at *1 (S.D.N.Y. June 24, 1999).

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.