**Anthony R. LONDON, Plaintiff–Appellant,**

v.

**BERKSHIRE LIFE INSURANCE COMPANY, Defendant–Appellee.**

**Docket No. 02–9251.**

United States Court of Appeals, Second Circuit.

Aug. 4, 2003.

---

Thomas D. Buchanan, Hacker & Murphy, Latham, NY, for Plaintiff–Appellant.

Arthur J. Siegel, (Joanmarie Dowling, on the brief) Bond, Schoeneck & King, Albany, NY, for Defendant–Appellee.

PRESENT: WINTER and B.D. PARKER, Circuit Judges and DRONEY, District Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Anthony R. London appeals from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing his breach of contract claim. London, a cardiologist, was the beneficiary of a disability policy issued by the defendant-appellee, Berkshire Life Insurance Company ("Berkshire"). After Berkshire denied London's claim for total disability benefits, London filed this action in the New York Supreme Court and it was removed to the district court.[1] The parties filed cross motions for summary judgment. After the district court granted Berkshire's motion, London appealed.

London purchased a Limited Issue Executive Disability Income Policy (the "policy") from Berkshire in 1981. On the application, London identified his occupation as: "cardiologist-private practice and Director of Coronary Care–St. Mary's Hospital and Amsterdam Memorial Hospital." The original policy language defined total disability as "your inability to engage in your occupation." However, in 1984, the policy language defining total disability was changed to "your inability to perform the material and substantial duties of your occupation." In addition to insuring against the risk of total disability, the policy also provided for a "residual disability benefit," which was defined in the policy as "(1)

---

* The Honorable Christopher F. Droney, of the United States District Court for the District of Connecticut, sitting by designation.

1. The substantive law of New York controls this diversity case. *See GNOC v. Endico,* 876 F.2d 1076, 1078 (2d Cir.1989).

your inability to do one or more of your important daily business or professional duties; or (2) your inability to do these duties for the length of time that they usually require."

In 1997, London was diagnosed with coronary artery disease. After bypass surgery, his physicians advised him that he could no longer maintain his rigorous work schedule. Following that advice, London reduced his workload. On June 4, 1997, London filed for disability benefits with Berkshire, claiming that he was totally disabled within the meaning of the policy. In order to assess the claim, Berkshire had London complete a "Description of Occupation" form, in which London was asked to list his occupational duties in order of importance, along with the number of hours per week those duties were performed. London listed three categories of duties: office duties ("48 plus" hours per week), hospital duties ("10 plus" hours per week), and night calls ("28 plus" hours per week). Berkshire concluded, after investigating the claim, that London "was able to continue working as a cardiologist," and denied coverage for total disability benefits. London has not made a claim for benefits under the residual benefits provisions of the policy.[1]

Both parties filed for summary judgment on the issue of whether London was totally disabled. London claimed that his disability necessitated reducing his office duties from 48 hours a week to 18 hours per week, that he can no longer perform hospital duties and night calls, and that "[h]e has essentially been relegated to the role of a part-time medical consultant." Berkshire conceded for purposes of its

summary judgment motion that London is unable to perform "pace-maker insertions" (a procedure that London included as part of his hospital duties), but claimed that he still performs work in all three of the categories and that he therefore "continues working as a cardiologist."

London asserts that there is at least a genuine issue of material fact as to whether he is able to perform the "material and substantial duties" of his job within the meaning of the policy. He also notes that the district court decision states that London was working three and one-half days a week after becoming disabled, and maintains that this was a misinterpretation of London's testimony that he worked three "half-days" per week.

We review the district court's grant of summary judgment *de novo*. *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir.2002). "Summary judgment is appropriate only where, examining the evidence in the light most favorable to the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations, internal quotation marks, and alterations omitted); *see also* Fed.R.Civ.P. 56(c). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The application of the "material and substantial duties" language in occupational disability policies is well-settled in New

---

1. In addition to meeting the policy definition of "residual disability," an insured claiming benefits under that portion of the policy must demonstrate that he has suffered a reduction in earnings of at least 25%. Because London has never submitted any earnings information, Berkshire claims it is unable to determine whether London is eligible for residual benefits.

York.[2] *See Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 124 (2d Cir.2000) ("The definition of total disability in Berkshire's policies tracks the standard articulated by the New York courts: [A] claimant is 'totally disabled' when he or she is no longer able to perform the 'material' and 'substantial' responsibilities of his or her job.") (citations and internal quotation marks omitted). Under New York law, the Court is required to

> [look] to the professional activities in which the insured was regularly engaged at the time of the onset of the insured's disability. If a claimant is able to perform the duties of a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties, he is not totally disabled.

*Klein v. National Life of Vt.*, 7 F.Supp.2d 223, 227 (E.D.N.Y.1998) (citing *Blasbalg v. Massachusetts Cas. Ins. Co.*, 962 F.Supp. 362, 367 (E.D.N.Y.1997)) (internal quotation marks omitted). Moreover, "the relevant test for assessing a claimant's occupation is the nature of the work actually being performed." *Id.* at 229.

While this inquiry is "fact-oriented," *see id.* at 227, even looking at the facts in a light most favorable to London it is clear that based on his description of his job duties after the onset of his disability and the undisputed evidence, he does not meet the totally disabled standard. Accepting that his office hours were reduced from 48 hours per week to 18 and that he was unable to conduct hospital duties and night visits, London's work was still of the "same general character" as it was prior to the onset of his disability. Despite London's assertion that he had become a mere "consultant," it is uncontested that he continued to see and treat his own patients in his capacity as a cardiologist, using "similar skills and training" as he used before the illness. Thus, the nature of his work was materially the same.

London relies on a number of cases in which insureds were held to be totally disabled as a matter of law under the "material and substantial" contract language. However, in those cases, the insureds were performing fundamentally different job duties after the onset of the disability than they had been performing previously. For example, in *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121 (2d Cir.2000) the Court held that the insured dentist was totally disabled based on his inability to practice "chair dentistry." Although the insured continued to be active in the administration of his various dental practices after the onset of his disability, the Court reasoned that, because prior to the disability "90 percent of his time was spent fixing the teeth of patients" the administrative work he was still able to perform was "incidental to his material and substantial duties as a full-time dentist." *Shapiro*, 212 F.3d at 124. Here, in contrast, even accepting London's estimation of his workload, he is not performing work that is fundamentally different from before his bypass surgery or that is merely incidental to his former practice. He continues to see and treat his own patients-the primary component of his pre-disability practice. Therefore, as he continues to perform work of the same general character as before the onset of his illness, he does not meet the materiality part of the test for total disability. *See Klein*, 7 F.Supp.2d at 227.

London also does not meet the second part of the "material and substantial duties" test. Although the reduction to 18 hours per week of patient diagnosis and

---

**2.** Indeed, Berkshire represents that the purpose of the policy language change in 1984 was to "incorporate settled New York law."

treatment (distributed over three days each week) is significant, that amount of patient care is substantial.[3]

Finally, the outcome is not affected by the district court's reference to London's testimony that he worked three and one-half days per week, rather than "three half-days." Even assuming that London was working one and one-half days rather than three and one-half days as the district court indicated, London was not totally disabled for the reasons discussed above.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

**3.** London concedes that he sees up to 15 patients each of the days he is at the office.