**Rolf SCHROEDER, Plaintiff,**

v.

**CAPITAL ONE FINANCIAL CORPORATION d/b/a/ Capital One Bank as successors in interest to North Fork Bancorporation d/b/a/ North Fork Bank, Defendant.**

No. CV 08–4614.

United States District Court,
E.D. New York.

Oct. 21, 2009.

Hofheimer Gartlir & Gross, LLP, by Robert Kenney, Esq., New York, NY, for Plaintiff.

Lazer, Aptheker, Rosella & Yedid, P.C., by Joseph C. Savino, Esq., Melville, NY, for Defendant.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action commenced by Plaintiff Rolf Schroeder ("Plaintiff"), against his bank, Capital One, N.A. ("Capital One" or the "Bank"), seeking repayment of funds that were allegedly transferred by the Bank pursuant to the instructions of an unauthorized third party. Plaintiff sets forth causes of action pursuant to: (1) the Electronic Funds Transfer Act, 15 U.S.C. § 1693 (the "EFTA"); (2) Section 4–A–202 of the New York Uniform Commercial Code ("UCC Section 4–A–202"); (3) conversion; (4) breach of fiduciary duty; (5) breach of the implied covenant of good faith and fair dealing; (6) unjust enrichment and, (7) Section 349 of the New York General Business Law ("Section 349").

Jurisdiction is based upon the presence of a federal question, as well as diversity of citizenship. Presently before the court is Defendant's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.

## BACKGROUND

### I. Factual Background

The facts set forth below are drawn from the allegations of the complaint, as well as affidavits and documents properly before the court.

#### A. The Parties and the Bank Account

Plaintiff is a citizen of the United States who resides in the Republic of the Philippines. He states that he has maintained a checking account with the Defendant Bank (or its corporate predecessor) for the past forty years. At some point during the parties' banking relationship, Plaintiff was asked to complete a "Universal Signature Card." (The "Signature Card"). Plaintiff's complaint characterizes the Signature Card as a "commercially reasonable and commercially acceptable security procedure in the banking industry." The Signature Card required that Plaintiff provide a signature that would serve as the authorized signature to be used in connection with transactions performed with respect to his account. Additionally, the Signature Card contained personal information to be used for security purposes. That information includes Plaintiff's telephone number, social security number, mother's maiden name, date of birth and his Philippines address. Plaintiff states his belief that the information provided on the Signature Card was to be used by the Bank to verify that any person calling the Bank to request a transaction with respect to Plaintiff's account was, indeed the Plaintiff. In particular, Plaintiff states his belief that his telephone number was provided on the Signature Card so that the Bank could make a telephone call to Plaintiff to verify any requested electronic action on Plaintiff's account, including a request made via facsimile.

#### B. The Transaction

Plaintiff alleges that on November 30, 2006, an unauthorized withdrawal was made from his account in the amount of $80,000. He states that this transfer was facilitated by way of a facsimile request, which he characterizes as an "electronic means," within the meaning of the EFTA. Plaintiff states that prior to the unauthorized withdrawal, he noticed that his mail showed signs of tampering. On or about November 29, 2006, fearing suspicious activity, and that his bank statements had been opened by a third party, Plaintiff called the Bank. He states that he spoke with a Bank representative, who Plaintiff identifies as Ms. Caruso, and reported suspicious activity with respect to his account. He further states that in the course of that telephone conversation he specifically told the Bank representative not to approve, complete or otherwise act with respect to any requests for electronic withdrawals from his account. According to Plaintiff, the Bank's representative assured him that a notation of his wishes was placed on the account. Plaintiff argues that the Bank's subsequent approval of the unauthorized withdrawal evidences the their "negligent, fraudulent, reckless, and/or intentional failure to abide by its contractual, statutory, common law and/or fiduciary duty obligations to Plaintiff."

In support of its version of the facts, the Bank has submitted the affidavit of Ms. Caruso. That affidavit states that the conversation to which Plaintiff refers was had with Erika Denegri, a Bank representative. She further states that Ms. Denegri was told by Plaintiff not to approve any mail withdrawals, and that such a notation

was placed on Plaintiff's account. A Bank document noting that direction is before the court.

Plaintiff alleges that despite his warning, the Bank accepted, and approved the fraudulent transaction that forms the basis of this lawsuit. The transaction is alleged by Plaintiff to have been made pursuant to a facsimile request dated November 28, 2006, which request Plaintiff alleges to include false and suspicious information. Among that information was a telephone number that did not match the number provided by the Plaintiff on the Signature Card. He further states that the address provided by the party who requested the withdrawal is located in an area in the Philippines that is well known in the banking industry as a bed of criminal activity.

The affidavit of Ms. Caruso states that the direction to transfer the funds on Plaintiff's account was made, not by facsimile, as stated by Plaintiff, but pursuant to a telephone call initiated by a person stating that he was the Plaintiff. The Caruso affidavit states further that the person requesting the transfer responded correctly to three personal security questions. That person stated that the immediate transfer of funds was necessary because Plaintiff's house had burned down. The Bank concedes that the party making the request for the transfer provided a telephone number different from that provided by Plaintiff when he opened the account. To verify the transaction, however, the Bank states that it called the number provided by the caller. Instead of calling from the Bank, the Bank employee purchased a calling card to place the call so that the Bank would not be identified as the caller. The Bank agrees that after receiving the telephone call, it received the facsimile that Plaintiff alleges initiated the request for the transfer of funds. The Bank states that the signature on the facsimile matched the signature provided by

Plaintiff on the Signature Card, and that therefore, the request was approved and the transfer was effectuated.

Plaintiff states that he became aware of the fraudulent transaction on or about December 6, 2006. He called and wrote to the Bank advising it that the transfer of funds was unauthorized, and demanded that the transferred amount be returned to his account. The Bank states that it has denied Plaintiff's request to have the transferred funds reinstated because it has determined that appropriate security procedures were followed. This lawsuit followed.

## II. *Plaintiff's Causes of Action and the Motion for Summary Judgment*

As noted above, Plaintiff's complaint sets forth seven separate causes of action: (1) the Electronic Funds Transfer Act, 15 U.S.C. § 1693 (the "EFTA"); (2) Section 4–A–202 of the New York Uniform Commercial Code ("UCC § 4–A–202"); (3) conversion; (4) breach of fiduciary duty; (5) breach of the implied covenant of good faith and fair dealing; (6) unjust enrichment and, (7) Section 349 of the New York General Business Law ("Section 349").

Defendant's motion seeks dismissal of all causes of action. The EFTA action is sought to be dismissed on the ground that the request to transfer funds was made by way of a telephone call, and such transactions are specifically exempt from the EFTA. The UCC § 4–A–202 claim is alleged to be barred because the Bank had in place, and followed here, commercially reasonable security procedures. The conversion action is sought to be dismissed on the ground that money on deposit in a bank is not sufficiently specific to be subject to an action for conversion. The Bank contests the breach of fiduciary duty claim on the ground that it has no such relationship with Plaintiff. As to the cause of

action for breach of the implied covenant of good faith and fair dealing, the Bank alleges that Plaintiff fails to set forth the elements of any such claim. Finally, the Bank argues that Section 349 of the General Business Law does not apply because this is a private contractual dispute between the Bank and its customer. The Court turns now to the merits of the motion.

## DISCUSSION

### I. Standards on Motion For Summary Judgment

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir.2003). The Court should not grant summary judgment if there is "any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Ford*, 316 F.3d at 353; *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002). In addition, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "A party opposing summary judgment may not rest upon mere

allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. 2505. "The mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). Enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### II. Disposition of the Motion

#### A. The EFTA

■ The EFTA specifically exempts from the definition of "electronic fund transfer," and thus coverage of the statute, "any transfer of funds which is initiated by a telephone conversation...." 15 U.S.C. § 1693a(6)(E).[1] The Bank contends that the transfer here, whether right or wrong, was initiated by a telephone call made to its representative. Plaintiff argues that the unauthorized transfer was made pursuant to a facsimile transmission, and disputes the Bank's description of the telephone call that it allegedly received. If the transfer was, indeed, initiated as the Bank contends, it is likely that the EFTA does not apply. *See Kashanchi v. Texas Commerce Medical Bank, N.A.*, 703 F.2d 936, 942 (5th Cir.1983). The facts surrounding the transfer, however, are in dispute and not ripe for review in the context of this motion. The court therefore denies the motion for summary judgment as to the EFTA cause of action.

#### B. The UCC § 4-A-202 Claim

■ Section § 4-A-202 of the New York UCC provides that an account holder

---

1. To be exempt from the EFTA, the transaction must have been initiated by a telephone call and not have been "pursuant to a prearranged plan under which periodic or recurring transfers are not contemplated." This latter provision is not at issue in this case.

bears the risk of loss if he has agreed to a bank's security procedure and: (1) that procedure is "commercially reasonable," and (2) the bank has, in fact, followed its procedure. NYUCC § 4–A–202(2). The issue of whether a bank's procedures are "commercially reasonable" is a question of law for the court. NYUCC 4–A–202(3); *Centre–Point Merchant Bank, Ltd. v. American Express Bank, Ltd.,* 2000 WL 1772874 *4 (S.D.N.Y.2000). As to the latter requirement, the burden is on the bank to show that "it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer." NYUCC § 4–A–202(2). This issue presents a question of fact. *Centre–Point,* 2000 WL 1772874 *4.

There does not appear to be an issue here as to whether the Bank had in place a security procedure that complies with the statute. At issue, however, is whether the Bank actually complied with that procedure. The presence of this important issue of fact precludes summary judgment on the issue of risk of loss pursuant to NYUCC § 4–A–202(2). *Accord Regatos v. North Fork Bank,* 257 F.Supp.2d 632, 647 (S.D.N.Y.2003) (denying bank motion for summary judgment due to question of fact as to compliance with security procedure).

## C. *Conversion*

█ Where as here, a bank is holding funds for an account holder, those funds represent a debt to the account holder. As such, the funds are not sufficiently identifiable to support a claim for conversion. *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y. 1991). Since Plaintiff's conversion claim is based upon the allegedly wrongful distribution of funds in Plaintiff's account, and not "specific, identifiable money or tangible personal property," *id.* at 214 (citation

omitted), the motion for summary judgment dismissing the claim for conversion is granted.

## D. *Breach of Fiduciary Duty*

█ It is well settled that New York law regards the relationship between a bank and an account holder as that of debtor and creditor, and that relationship is not fiduciary in nature. *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 318 (2d Cir.1993); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 122 (2d Cir.1984); *see Bank Leumi Trust Co. v. Block 3102 Corp.,* 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, 301 (1st Dep't.1992). Plaintiff attempts to avoid this rule by relying on his long term banking relationship with the Bank. Even where such a relationship is established, it is insufficient to support a claim that the relationship is fiduciary in nature. *Yanakas,* 7 F.3d at 318; *Aaron Ferer,* 731 F.2d at 122. Accordingly, the motion for summary judgment dismissing the claim for breach of fiduciary duty is granted.

## E. *Breach of Implied Warranty of Good Faith and Fair Dealing*

█ New York law implies a covenant of good faith and fair dealing in all contracts. *Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991); *Russo v. Banc of America Securities, LLC,* 2007 WL 1946541 *6 (S.D.N.Y.2007). This provision "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir. 1989). The duty is violated when one party acts to deprive the other of the right to receive the benefits under the agreement. *E*TRADE Financial Corp. v. Deutsche Bank AG,* 631 F.Supp.2d 313, 388 (S.D.N.Y.2009); *Don King Productions,*

*Inc. v. Douglas,* 742 F.Supp. 741, 767 (S.D.N.Y.1990).

■■■ A cause of action for breach of an implied warranty of good faith and fair dealing requires the pleading of intent by the breaching party to deprive the injured party of his rights under the contract. *Russo,* 2007 WL 1946541 *6; *see Dweck Law Firm v. Mann,* 340 F.Supp.2d 353, 358 (S.D.N.Y.2004) (implied covenant of good faith and fair dealing prohibits contracting parties from "intentionally" doing anything "to prevent the other party from carrying out his part of the agreement") (citation omitted). No such conduct or intent is pled here. Instead, this cause of action is supported only by the same facts that are alleged to support the claim that the Bank violated its obligations to the Plaintiff. Accordingly, the court grants the motion for summary judgment dismissing the claim for breach of implied contractual provisions of good faith and fair dealing.

### F. General Business Law Section 349

■■■ To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are "consumer oriented;" (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts. *See Gaidon v. Guardian Life Ins. Co. of America,* 94 N.Y.2d 330, 343–44, 704 N.Y.S.2d 177, 182–83, 725 N.E.2d 598 (N.Y.1999); *Shapiro v. Berkshire Life Ins. Co.,* 212 F.3d 121, 126 (2d Cir.2000); *DePasquale v. Allstate Ins. Co.,* 179 F.Supp.2d 51, 58–59 (E.D.N.Y.2002).

■■■ The consumer oriented prong of the Section 349 claim requires a plaintiff to show that the practices complained of have a "broad impact on consumers at large; 'private contract disputes unique to the parties ... would not fall within the ambit of the statute.'" *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763 (N.Y.1995), quoting, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741 (N.Y.1995); *see also Shapiro,* 212 F.3d at 126.

■■■ The conduct complained of here is a personal dispute between the Bank and the Plaintiff. Such a private dispute lacks the broad consumer impact required to sustain a claim pursuant to Section 349. Accordingly, the court grants the motion for summary judgment dismissing this claim.

### G. Claim for Unjust Enrichment

■■■ Under New York law, a claim for unjust enrichment requires a plaintiff to establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey,* 448 F.3d 573, 586 (2d Cir. 2006); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir.2004); *Allstate Ins. Co. v. Rozenberg,* 590 F.Supp.2d 384, 395 (E.D.N.Y. 2008); *Clark v. Daby,* 300 A.D.2d 732, 751 N.Y.S.2d 622, 623 (3d Dep't.2002).

■■■ While the Plaintiff here alleges wrongful conduct on the part of the Bank, he nowhere alleges, nor can he, that the Bank benefitted from such wrongful conduct. Indeed, the only party that benefitted from the alleged wrongful transfer of funds was the unauthorized third party to whom the funds were transferred. Since there is no benefit to the Bank stemming form the allegedly wrongful transfer of funds, the court grants the motion for summary judgment and dismisses Plaintiff's cause of action for unjust enrichment.

*CONCLUSION*

Defendant's motion for summary judgment is granted in part and denied in part. The court dismisses the claims for conversion, breach of fiduciary duty, breach of the implied warranty of good faith and fair dealing, Section 349 of the New York General Business Law and unjust enrichment. The court denies summary judgment as to the claims pursuant to the Electronic Funds Transfer Act and the New York Uniform Commercial Code. The Clerk of the Court is directed to terminate the motion for summary judgment.

SO ORDERED.