John A. DEPASQUALE, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendants.

No. CV 01–5834.

United States District Court, E.D. New York.

Jan. 4, 2002.

Anderson, Kill & Olick, P.C., by Eugene R. Anderson, New York City, for Plaintiff.

Feldman, Rudy, Kirby & Farquharson, P.C., by Gerald F. Kirby, Westbury, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a case brought by Plaintiff, John A. DePasquale ("Plaintiff") an insured un-

der policies of insurance issued by Defendant, Allstate Insurance Company ("Allstate"). Federal jurisdiction is premised on diversity of citizenship. While the complaint is a somewhat tortuous read, Plaintiff appears to allege several causes of action and various forms of damage (including damages attributable to emotional distress and punitive damages) stemming from Allstate's refusal to defend him in connection with a lawsuit brought by purchasers of Plaintiff's former home.

Presently before the court is Allstate's motion to dismiss. For the reasons set forth below, the motion is granted and the case is dismissed in its entirety.

## BACKGROUND

### I. The Parties and the Policies of Insurance

Plaintiff is currently a resident of Locust Valley, New York. Prior to relocating to Locust Valley, Plaintiff owned a home located in Bay Shore, New York (the "Bay Shore Home"). Beginning in 1995 and including the time period until Plaintiff sold the Bay Shore Home, he was the named insured under a homeowner's policy of insurance issued by Allstate. Plaintiff also held a personal umbrella policy issued by Allstate. The court refers to these policies collectively as "the Policies."

### II. The Sale of Plaintiff's Home and the Buyer's Claims

On March 17, 1999, Plaintiff sold the Bay Shore Home to Sam Leno and Elizabeth York (the "Buyers") for $900,000. After the sale, the Buyers informed Plaintiff of structural damage to the Bay Shore Home. The Buyers attributed the damage to a moisture condition within the structure of the house. According to the Buyers, the water damage was directly attributable to renovations undertaken by Plaintiff in 1991 involving faulty re-cladding of the house with an exterior insulation and finish system. Correspondence written by the Buyers to Plaintiff indicated that the damage to the Bay Shore Home was so great that they intended to demolish the home.

In a letter dated September 13, 1999, Plaintiff advised Allstate of the Buyers' contentions regarding the damage to the Bay Shore Home and told the insurer of the Buyer's intention to demolish the house on September 20, 1999. It appears to the court that the Bay Shore Home was demolished without Allstate having made any inspection of the structure.

### III. Prior State Court Litigation

As discussed below, the factual scenario described above has led to the institution of three separate lawsuits that are presently pending in New York State Court.

#### A. The Buyers' Action Against Plaintiff

After becoming aware of the water damage, the Buyers made a claim for damages directly to Allstate. In a letter dated October 1, 1999, Allstate denied payment of the claim on the ground that their insured was not responsible for the occurrence. Thereafter, on March 27, 2000, the Buyers commenced an action against Plaintiff in New York State Supreme Court, Nassau County. The lawsuit seeks rescission and damages for actual and constructive fraud and alleges that Plaintiff knew of and concealed the water damage to the Bay Shore Home. In their lawsuit, the Buyers seek damages of at least $700,000.

Plaintiff advised Allstate of the lawsuit commenced by the Buyers and requested indemnification and a defense pursuant to the Policies. In a letter dated May 16, 2000, Allstate advised Plaintiff that the allegations set forth in the Buyers' lawsuit

did not constitute an "occurrence" within the meaning of the Policies and therefore, denied Plaintiff's request for indemnification and representation. Specifically, Allstate took the position that the allegations set forth an intentional act and not an accidental act for which the Policies would have provided coverage.

### B. *Allstate's Declaratory Judgment Action*

After declining coverage, Allstate commenced a State Court declaratory judgment action in Supreme Court, Nassau County, (the "DJ Action") seeking a declaration of the rights of the parties under the Policies. The DJ Action seeks a declaration that Allstate has no duty to defend or indemnify Plaintiff in the action commenced by the Buyers.

### C. *Plaintiff's Action Against Allstate*

Prior to Allstate's institution of the DJ Action, Plaintiff commenced a State Court action directly against Allstate in Supreme Court, Nassau County. In this action, which, essentially, sought to require Allstate to defend Plaintiff in connection with the Buyers' action, Plaintiff alleged twelve separate causes of action against Allstate. The causes of action alleged by Plaintiff in his action against Allstate are set forth in the State Court complaint as follows:

(1) Allstate has refused to pay for Plaintiff's loss and has denied liability under the policies;

(2) Allstate has failed to fulfill its obligations to Plaintiff to act in good faith and with fair dealing;

(3) Allstate has failed to properly or timely investigate the claim;

(4) Allstate acquiesced in the spoliation of evidence;

(5) Allstate failed to assist in the presentation of the claim in accordance with New York law;

(6) Allstate failed to provide proof of loss to Plaintiff;

(7) Allstate failed to disclose the existence of property insurance coverage;

(8) Allstate concealed the existence of property insurance coverage;

(9) Allstate failed to inform Plaintiff of its decision to deny his claim on a timely basis although it had unilaterally made the decision that it would deny and not disclose insurance coverage and told the purchases of Plaintiff's home that there was no insurance coverage;

(10) Allstate failed to deal honestly and fairly with its policyholder and put its own interests ahead of the interests of its policyholder;

(11) Allstate failed to send a disclaimer letter in a timely fashion and, finally,

(12) Allstate failed to specify the basis upon which its disclaimer was denied and failed to include any disclaimer for property damage.

Allstate moved to dismiss the second through twelfth causes of action in Plaintiff's complaint as well as all claims seeking punitive damages and attorney's fees.

In an opinion dated June 13, 2001, Allstate's motion was granted. Essentially, the state court held that all causes of action, although separately stated, were based upon allegations of intentional and wrongful behavior on the part of Allstate in the handling of Plaintiff's insurance claim. The court applied the New York law standard for recovery of punitive and bad faith damages against a first-party insurer and held that Plaintiff failed to set forth conduct that properly constituted an

allegation of the required egregious tortious conduct. *See Rocanova v. Equitable Life Assurance Society of the United States,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342–43, 634 N.E.2d 940 (1994). Although the court granted the motion to dismiss, it denied a motion for summary judgment on Plaintiff's first cause of action without prejudice to renewal upon the completion of discovery.

## IV. The Complaint

Plaintiff's complaint in this court alleges seven causes of action against Allstate. The first cause of action states that the DJ Action was "not authorized in accordance with New York law" and is "void *ab initio.*" Plaintiff supports his argument as to the invalidity of the DJ Action with the allegation that the action was commenced by a "renegade Allstate outside lawyer and aided and abetted by Allstate employees." Plaintiff concludes that the DJ Action was commenced at the behest of "low level corporate employees" who could not commence a lawsuit on behalf of a corporation.

Plaintiff's second cause of action in this court alleges that Allstate breached its obligations under the Policies by failing to defend Plaintiff in the action commenced by the Buyers. The third cause of action alleges a breach of Allstate's duties of good faith and fair dealing and the company's failure to assist its policyholder. Plaintiff's fourth cause of action alleges Allstate's failure to supervise its employees and states that institution of the DJ Action constitutes a "public harm and a burden on the judicial system generally."

Plaintiff's fifth, sixth and seventh causes of action allege that Allstate is guilty of spoliation of evidence, has failed to maintain proper records and improperly covered up its early decision to deny Plaintiff coverage in the action commenced by the Buyers. Finally, Plaintiff alleges a New York State Law deceptive business practices action pursuant to section 349 of the New York State General Business Law ("Section 349").

## V. The Motion to Dismiss

Defendant moves to dismiss the complaint in its entirety. Dismissal is sought on the grounds of res judicata, collateral estoppel and the *Rooker–Feldman* doctrine, *see Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Defendant also seeks to have this court abstain from exercising jurisdiction over the issue of the parties' rights under the Policies in favor of the pending state court proceedings. Finally, Defendant argues that Plaintiff's complaint fails to state a claim pursuant to Section 349.

## DISCUSSION

### I. Legal Principles

#### A. Motions To Dismiss

Defendants' motions are made in the context of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco Corp. v. Segui,* 91 F.3d 337, 341 (2d Cir.1996); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

When considering a motion to dismiss for failure to state a claim, the court can consider the facts as set forth in the complaint, documents attached thereto and those incorporated in the complaint by reference. *Stuto v. Fleishman,* 164 F.3d 820, 826 n. 1 (2d Cir.1999); *Kramer v. Time*

*Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991). Such consideration includes documents of which plaintiff had notice "and which were integral to their claim ... even though those documents were not incorporated into the complaint by reference." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

**B.  *Res Judicata and Collateral Estoppel: General Principles***

■ Under the Full Faith and Credit Clause of the Constitution, a federal court is required to give the same preclusive effect to a state court judgment as would be given under the law of the State in which the judgment was rendered. *Migra v. Warren City School Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Johnson v. Watkins,* 101 F.3d 792, 794 (2d Cir.1996). Accordingly, the court must consider the law of the State of New York when determining the preclusive effect of the prior proceeding.

■ Under New York law, application of the principle of res judicata bars re-litigation of a claim actually raised as well as a claim that might have been raised in a prior proceeding. New York courts hold that where claims arise from the same " 'factual grouping' they are deemed to be part of the same cause of action and a later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986), citing, *Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981). Thus, res judicata bars re-litigation of claims actually raised in a prior proceeding as well as those that could have been litigated. *Quartararo v. Catterson,* 917 F.Supp. 919, 944 (E.D.N.Y.1996).

■ Under New York law, collateral estoppel, also known as issue preclusion, will preclude re-litigation of an issue, if the issue sought to be precluded is identical to the issue in the first proceeding and is one which has necessarily been decided in the earlier proceeding in the context of a full and fair opportunity to litigate. *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995); *see Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17–18, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982); *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). The party seeking preclusion bears the burden of showing the identity of issues while the party against whom collateral estoppel is asserted bears the burden of showing the absence of a full and fair opportunity to litigate. *Colon,* 58 F.3d at 869; *Quartararo,* 917 F.Supp. at 944; *Capital Tel.,* 56 N.Y.2d at 18, 451 N.Y.S.2d 11, 436 N.E.2d 461.

■ Collateral estoppel is applied to protect litigants from multiple lawsuits and to conserve judicial resources. The doctrine "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1485 (2d Cir.1995) (quoting *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

**C.  *The Rooker–Feldman Doctrine***

■ The *Rooker–Feldman* doctrine holds that federal courts lack jurisdiction over cases that seek, essentially, review of state court judgments. *Rooker–Feldman* precludes the federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. A federal case is inex-

tricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin,* 22 F.Supp.2d 180, 185 (S.D.N.Y.1998), quoting, *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

### D. *Abstention*

■■■ Defendants characterize this action as a "quasi-declaratory judgment" action and seek abstention normally exercised when a litigant seeks to avoid federal litigation of an action commenced pursuant to the Federal Declaratory Judgment Act. 28 U.S.C. § 2201–02. In such cases, the decision to abstain is one of discretion. *See Wilton v. Seven Falls, Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp,* 108 F.3d 17, 21 (2d Cir.1997).

While the discretionary factors set forth by the Supreme Court in *Wilton* arose in the context of a case brought pursuant to the Declaratory Judgment Act, the Second Circuit has held clearly that such discretion is appropriately exercised with reference to any claim for declaratory relief that is brought within the jurisdiction of the federal courts. *Karp,* 108 F.3d at 21.

■■■ Exercise of the court's discretion to abstain requires consideration of the following factors:

- the scope of the pending state proceeding and the nature of the defenses available there;
- whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding;
- whether the necessary parties have been joined;
- whether such parties are amendable to process in that proceeding;

- avoiding duplicative proceedings and
- avoiding forum shopping.

*National Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.,* 2001 WL 194903 *3 (S.D.N.Y. February 27, 2001); see also *Commercial Underwriters Ins. Co. v. Glowmaster Corp.,* 105 F.Supp.2d 268, 270 (S.D.N.Y.2000). Additionally, a court considers the traditional abstention factors set forth by the Supreme Court in *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). These factors include: (1) the relative convenience of the fora; (2) the order of filing and, (3) that choice of law retain its vitality. *National Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.,* 2001 WL 194903 *3 (S.D.N.Y. February 27, 2001).

### E. *Stating a Claim Pursuant to Section 349*

■■■ To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are "consumer oriented," (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts. *See Gaidon v. Guardian Life Ins. Co. of America,* 94 N.Y.2d 330, 343–44, 704 N.Y.S.2d 177, 182–83, 725 N.E.2d 598 (N.Y.1999); *Shapiro v. Berkshire Life Ins. Co.,* 212 F.3d 121, 126 (2d Cir.2000); *Harary v. Allstate Ins. Co.,* 983 F.Supp. 95, 97–98 (E.D.N.Y.1997).

■■■ The consumer oriented prong of the Section 349 claim requires a plaintiff to show that the practices complained of have a "broad impact on consumers at large; 'private contract disputes unique to the parties ... would not fall within the ambit of the statute.'" *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763 (N.Y.1995), quoting, *Oswego Laborers' Lo-*

cal 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741 (N.Y.1995); *see also* *Shapiro*, 212 F.3d at 126.

## II. *Disposition of the Motion*

Consideration of Plaintiff's complaint here, in light of the legal principals discussed above, leaves the court to the clear and unmistakable conclusion that Plaintiff's entire complaint must be dismissed. Certain claims are clearly barred by the doctrines of res judicata and collateral estoppel. Such claims are also barred by the *Rooker–Feldman* doctrine. The claim for declaratory relief is one from which this court should abstain from deciding. Finally, Plaintiff fails to state a claim pursuant to Section 349.

### A. *Claims Barred by Res Judicata, Collateral Estoppel and the Rooker– Feldman Doctrine*

Application of the principles of res judicata and collateral estoppel require dismissal of Plaintiff's third, fifth and seventh causes of action. These claims assert a breach of the duties of good faith and fair dealing in Allstate's alleged failure to investigate Plaintiff's claim; spoliation of evidence and covering up the early decision to deny coverage. These precise claims, as well as the claims for punitive damages and attorney's fees, were raised by Plaintiff against Allstate in the State Court action commenced by Plaintiff. Such claims were dismissed, on the merits, by the State Court when it granted Allstate's motion to dismiss. The identity of parties and claims requires application of the principles of res judicata and collateral estoppel and precludes Plaintiff from raising these claims anew in this court.

Re-litigation of the claims set forth in the third, fifth and seventh causes of action, as well as the claims for punitive damages and attorney's fees, is also barred by the *Rooker–Feldman* doctrine. As noted, this doctrine prohibits federal courts from exercising jurisdiction over cases that seek review of "inextricably intertwined" state court judgments. A federal case is inextricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin*, 22 F.Supp.2d 180, 185 (S.D.N.Y.1998), quoting, *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). Allowing Plaintiff to re-litigate the same claims dismissed in the state court action violates the *Rooker–Feldman* doctrine because Plaintiff's claims here can succeed "only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin*, 22 F.Supp.2d 180, 185 (S.D.N.Y.1998), quoting, *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). *Rooker–Feldman* divests this court of jurisdiction to hear such claims. *Accord Murray v. Administration for Children's Services*, 1999 WL 33869 at *2 (S.D.N.Y.1999); *George v. Letren*, 1998 WL 684857 at *3 (S.D.N.Y. 1998).

### B. *The Court Abstains From Hearing Any Declaratory Relief Claims*

#### 1. *Plaintiff's Claim Is One for Declaratory Relief*

Stripped of excess factual verbiage, Plaintiff's first, second, fourth and sixth causes of action claim that Allstate breached its obligations under the Policies by failing to defend and indemnify Plaintiff for claims brought by the Buyers concerning damage to the Bay Shore Home. Such claims can be properly characterized only as a single claim for declaratory relief under a contract of insurance. In view of the pendency of the DJ action, the court

exercises its discretion to abstain from deciding the coverage issue in this forum.

Consideration of all relevant factors discussed above leads to this conclusion. First, the scope of the pending state proceeding and the nature of the defenses available there are precisely the same as the scope of this proceeding and available defenses. Second, the claims of all parties in interest can satisfactorily be adjudicated in the DJ Action. Third, the necessary parties (Allstate and Plaintiff) are parties to the DJ Action. Fourth, allowing Plaintiff to proceed here will result in duplicative proceedings. Finally, allowing Plaintiff to proceed here will result in forum shopping, a result to be avoided. In view of the fact that the *Wilton* factors weigh, exclusively, in favor of abstention, the court holds that it is appropriate to abstain from deciding decision on this declaratory judgment action in favor of the action pending in the state forum. *Accord Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F.Supp.2d 268, 271 (S.D.N.Y.2000) (abstaining from exercising jurisdiction over a declaratory judgment action involving insurance coverage in favor of a pending parallel state court proceeding).

Even if the somewhat stricter factors of *Colorado River* abstention are applied, abstention would remain appropriate. The state court is as convenient a forum as this court; the DJ Action was filed prior in time to this action and the State Court is certainly in a better position than this court to apply the insurance laws of the State of New York.

### 2. *Plaintiff's Attempt to Avoid Abstention is Frivolous*

In an attempt to avoid this classic case for abstention, Plaintiff raises an argument that must have been hatched on a recent trip to Fantasy Land. According to

Plaintiff, abstention is required only if the pending state court action is "valid." A proposition that appeared fair enough but quickly lost credibility when the court read Plaintiff's argument for attacking the state court action as invalid, or in the words of the Plaintiff as "void *ab initio*."

Plaintiff attacks the validity of the DJ Action on the ground that it was not commenced in accord with Allstate's internal procedures. The Allstate attorney who commenced the DJ Action is described as a "renegade" outside lawyer who was aided and abetted by Allstate employees in the improper commencement of litigation. According to Plaintiff, the DJ Action could be properly commenced only with Allstate's "home office" approval. Since (again according to Plaintiff) such approval was never secured, the DJ Action is not only void, but constitutes a "public harm and a burden on the judicial system generally." Strong words coming from a party who makes one of the most fanciful arguments seen by this court in recent years.

The court is hard-pressed to understand why the Plaintiff thinks he has any standing to raise the internal Allstate issue of who is authorized to file a summons and complaint on the part of the company. In any event, the short answer to Plaintiff's convoluted reasoning is that it is not for Plaintiff to determine whether or not Allstate's outside counsel was specifically authorized to commence the DJ Action. Had Allstate found the DJ Action improper, it could have ordered discontinuance of that action shortly after its commencement. This, it did not do. Instead, it continues to prosecute that action vigorously. Accordingly, even if not technically authorized by some internal Allstate procedure, continued prosecution of the DJ Action has clearly, at this point, been ratified by the "home office." Under these circumstances, the court refuses to characterize

the DJ Action as "void." and rejects the argument against abstention.[1]

It is also worth noting that Plaintiff's counsel, in a case recently decided by the Southern District of New York, advanced the precise argument now raised by Allstate, in favor of abstention. In *Commercial Underwriters Ins. Co. v. Glowmaster*, 105 F.Supp.2d 268 (S.D.N.Y.2000), Plaintiff's counsel represented defendant Glowmaster. There, the plaintiff insurance company instituted a declaratory judgment action in Federal Court. Glowmaster thereafter commenced a state court declaratory judgment action. Arguing vigorously in favor of abstention. Glowmaster, represented by Plaintiff's counsel (Anderson, Kill & Olich), sought dismissal of the federal case. Thus, in the Southern District case, Plaintiff's counsel advanced the precise legal argument advanced here by Allstate. The Southern District judge, like the court here, agreed that abstention was proper and dismissed the federal case. *See Glowmaster*, 105 F.Supp.2d at 270.

The court wishes to make clear that it is not so naive as to presume that an attorney must always argue the same side of a legal argument. Certainly, clients have different needs that may require counsel to advance opposite sides of a legal argument. The court highlights counsel's position in the *Glowmaster* case, however, to respond to Plaintiff's argument that Allstate, by taking a particular position in a lawsuit decided in the Ninth Circuit, is somehow playing both sides of the legal fence.

The position alleged to have been taken by Allstate in the Ninth Circuit appears to be that the company is not bound by the acts of low level employees. Even if that proposition was somehow relevant to this matter—which it is not—the making of such an argument in California would not hold sway with this court. The fact that the insurance company states that it is not bound by the acts of low level employees does nothing to invalidate the DJ Action, which the company continues to prosecute. Accordingly, like the rest of Plaintiff's frivolous arguments, the court rejects the notion that Allstate's so-called "judicial admission" before the Ninth Circuit has any relevance here. The court concludes, as well, that it is Plaintiff's action in this court, and not Allstate's DJ Action, that is more properly characterized as a "public harm and a burden on the judicial system generally."

## C. Plaintiff States No Claim Pursuant to General Business Law Section 349

Dismissal of the claims discussed above leaves Plaintiff with a single undisposed cause of action—the claim pursuant to Section 349. This claim, too, must be dismissed

█ As noted, to state a claim pursuant to Section 349, a Plaintiff must show, *inter alia*, acts or practices that are "consumer oriented." *See Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330, 343–44, 704 N.Y.S.2d 177, 182–83, 725 N.E.2d 598 (N.Y.1999); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir.2000); *Harary v. Allstate Ins. Co.*, 983 F.Supp. 95, 97–98 (E.D.N.Y.1997). This requires a showing that the practices complained of amount to more than a private contractual dispute. *See New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290, 662

---

1. To the extent that Plaintiff is of the opinion that institution of the DJ Action somehow amounts to a breach of any condition of the Policies, that is a matter that can properly be raised as a defense to the DJ Action.

N.E.2d 763 (N.Y.1995); *see also Shapiro,* 212 F.3d at 126.

Several courts have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349. Almost uniformly, those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349. *See, e.g., New York University,* 87 N.Y.2d at 320, 639 N.Y.S.2d at 290, 662 N.E.2d 763 (dispute concerning coverage under an employee dishonesty policy); *Shapiro v. Berkshire Life Ins. Co.,* 212 F.3d 121, 126 (2d Cir.2000) (dispute concerning scope of coverage under disability policy); *Moxy Ultimate, Inc. v. Great Northern Ins. Co.,* 2001 WL 194896 *3 (S.D.N.Y. February 27, 2001) (dispute concerning coverage under fire insurance policy); *Allahabi v. The New York Life Ins. Co.,* 1999 WL 126442 * 2 (S.D.N.Y. March 10, 1999) (dispute involving coverage under a life insurance policy); *Harary,* 983 F.Supp. at 99 (dispute concerning coverage under fire insurance policy); *MaGee v. Paul Revere Life Ins. Co.,* 954 F.Supp. 582, 586–87 (E.D.N.Y.1997) (dispute concerning coverage under disability policy).

Upon consideration of the allegations of the Plaintiff's complaint, the court concludes that Plaintiff's Section 349 claim is no more than a private contractual dispute concerning the scope of coverage under the Policies. As such, the claim lacks the broad consumer impact that a claim pursuant to Section 349 requires. Defendant's motion to dismiss the claim pursuant to Section 349 is, accordingly, granted.

## CONCLUSION

For the foregoing reasons, the court grants Defendant's motion to dismiss in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.