**ALLSTATE INSURANCE COMPANY, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company, Continental Insurance Company, Deerbrook Insurance Company, Encompass Indemnity Company, The Glens Falls Insurance Company and National Ben Franklin Insurance Company of Illinois, Plaintiffs,**

v.

**Alexander ROZENBERG, M.D., A.R. Medical Rehabilitation, P.C., A.R. Medical Art, P.C., Yonkers Medical Art, P.C., Inna Polack, Alexander Polack, Yuliy Goldman, Mighty Management Group, Inc., Mighty Management LLC, Blue Wave Management, Inc., Natalya Shvartsman, Emmanuel Kucherovsky and Shaun Robinson (aka "Prince"), Defendants.**

No. 08–CV–565 (ADS)(ETB).

United States District Court, E.D. New York.

Dec. 29, 2008.

Smith & Brink, P.C., by Richard Steig-
man, Esq., Michael W. Whitcher, Esq.,

Nathan A. Tilden, Esq., Richard D. King, Esq., of Counsel, Garden City, NY, for Plaintiffs.

Hoffman Einiger & Polland PLLC, by Mark L. Furman, Esq., of Counsel, New York, NY, for Defendants Alexander Rozenberg, A.R. Medical Rehabilitation, P.C., A.R. Medical Art, P.C., and Yonkers Medical Art, P.C.

Matthew J. Conroy & Associates, P.C., by Matthew J. Conroy, Esq., of Counsel, Belesi Donovan & Conroy, by Maria Campese Diglio, Esq., of Counsel, Garden City, NY, for Defendants Inna Polack, Alexander Polack, Mighty Management Group, Inc., Mighty Management, LLC, Blue Wave Management, Inc., and Natalya Shvartsman.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On February 12, 2008, the Plaintiffs (or "Allstate"), a group of nine insurers, commenced this action alleging that the numerous Defendants conspired to abuse New York's No–Fault Insurance regime, N.Y. Ins. Law § 5101 et seq., in order to obtain payment for medical services and diagnostic tests that were not medically necessary, or in some cases, never performed at all. The Plaintiffs assert common law claims for fraud and unjust enrichment, and seek damages for violations of N.Y. Gen. Bus. L. § 349, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

On April 30, 2008, Defendants Inna Polack, Alexander Polack, Natalya Shvartsman ("the Management Defendants"), and Mighty Management Group, Inc., Mighty Management LLC, and Blue Wave Management, Inc. ("the Management Companies") moved to dismiss Counts I, II, III, IV, V, and VIII of the Plaintiffs' complaint. On June 5, 2008, Defendants Dr. Alexan-

der Rozenberg ("Rozenberg"), A.R. Medical Rehabilitation, P.C., A.R. Medical Art, P.C., and Yonkers Medical Art, P.C. ("the PC Defendants") moved to dismiss Counts I–V. For the sake of judicial economy, and because these separate motions raise the same arguments, the Court will address both motions together.

## I. BACKGROUND

### A. The Alleged Scheme

Pursuant to New York's No–Fault insurance regime, the Plaintiffs are required to provide benefits to eligible insured persons for medically necessary diagnostic tests. The insureds in turn may assign their rights to such benefits to their medical providers in order to reimburse them for services rendered. The Plaintiffs allege that Rozenberg, a licensed neurologist, is the straw owner of the PC Defendants. The PC Defendants are medical professional corporations that billed the Plaintiffs for consultations, neurological exams, and range of motion testing performed upon patients insured by Allstate. According to the Plaintiffs, Rozenberg played no role in the actual operation or management of the PC Defendants.

The Plaintiffs assert that the PC Defendants were in fact operated by the Management Companies; New York corporations that are owned and controlled by Inna Polack, Alexander Polack, and Yuliy Goldman. The Plaintiffs allege that the sole purpose of establishing the relationship between the PC Defendants and the Management Companies was to facilitate a scheme to defraud Allstate by creating and submitting, through the mail, fraudulent medical reports and invoices for medical services in support of hundreds of No–Fault insurance claims. In particular, the Plaintiffs aver that the Defendants submitted bills for services not rendered; charged excessive fees for unnecessary

medical treatment; and induced Allstate and the other insurers to pay No–Fault insurance claims to professional medical corporations that were owned by non-licensed individuals.

The Plaintiffs allege that Inna Polack, Alexander Polack, and Rozenberg created the PC Defendants with different names, addresses, and taxpayer identification numbers to reduce the likelihood that insurers would uncover their scheme. The Plaintiffs further allege that, through the Management Companies, Inna Polack, Alexander Polack, and Goldman instructed non-medical personnel, including the Defendant Natalya Shvartsman, to implement pre-established treatment regimens that would maximize the PC Defendants' billing invoices.

The Plaintiffs contend that Rozenberg subjected their claimants to a battery of unnecessary tests and that the results of these examinations were often deliberately misrepresented or fabricated in order to justify further costly but unneeded treatments. The Plaintiff avers that, based upon these fabricated testing results, the Defendants submitted invoices to the Plaintiffs demanding payments for services that were not medically necessary or, in some cases, never rendered at all.

## B. The Indictment

On or about July 31, 2006, Rozenberg, Inna Polack, Natalya Shvartsman, Emmanuel Kucherovsky, Shaun Robinson, A.R. Medical, P.C., Mighty Management, LLC, and Mighty Management Group, Inc. ("the criminal Defendants") were indicted in Supreme Court, Kings County, in connection with a scheme to defraud No–Fault insurance carriers. According to the Indictment, the criminal Defendants controlled A.R. Medical. The Indictment alleges that the criminal Defendants paid a network of "steerers," such as Shaun Robinson, to stage automobile accidents and refer the victims to AR Medical for treatment. The Indictment alleges that AR Medical then defrauded insurance carriers by submitting fraudulent claims for health services.

The Indictment further alleges that although Rozenberg was the straw owner of AR Medical, it was in fact owned by Inna Polack. The Indictment alleges that Inna Polack established and enforced rules governing the solicitation of patients and the administration of patient treatment. According to the Indictment, the criminal Defendants fraudulently diagnosed patients with extensive injuries and submitted claims to insurance carriers for unnecessary treatment or, in some cases, treatment that was never provided at all. The Indictment also alleges that Inna Polack used the clinic's manager, Natalya Shvartsman, to carry out Polack's alleged scheme.

According to the Indictment, checks were drawn from the accounts of the Management Companies and made payable to corporations owned or controlled by Kucherovsky who, for a transaction fee, transferred these monies to Inna Polack. The Indictment alleges that during the period from January of 2005 until March of 2006, more than $2.3 million was deposited into the accounts of the Management Companies. According to the Plaintiffs, to date, Inna Polack, Shvartsman, Kucherovsky, and Robinson have all pled guilty to Insurance Fraud, Money Laundering, and Larceny.

## C. The Plaintiffs' Complaint

On February 12, 2008, the Plaintiffs commenced this lawsuit alleging that: (i) the Defendants violated RICO, 18 U.S.C. § 1962(c); (ii) the Defendants engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d); (iii) the Defendants committed common law fraud and unjust enrichment;

and (iv) the Defendants are liable under N.Y. Gen. Bus. L. § 349 for deceptive business practices.

## II. DISCUSSION

### A. 12(b)(6) Standard

In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005).

A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has interpreted *Twombly* to require that a complaint "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir.2007). On a 12(b)(6) motion to dismiss, the Court must limits its "consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans Inc.*, 421 F.3d 96, 100 (2d Cir.2005).

### B. The Defendants' Motions to Dismiss

The Defendants have filed separate motions to dismiss the complaint asserting that: (i) the Plaintiffs have failed to adequately set forth each Defendant's role in the alleged scheme; (ii) the Plaintiffs have failed to adequately plead that the Defendants carried on an "enterprise" within the meaning of RICO; (iii) the Plaintiffs cannot show that there was a RICO conspiracy because they have failed to allege an underlying RICO violation; (iv) the Plaintiffs failed to plead common law fraud with the requisite particularity; (v) the Plaintiffs cannot state a claim under N.Y. Gen. Bus. L. § 349 because they complain of practices that were not directed at consumers; and (vii) the Plaintiffs have failed to allege any "direct dealing," with the Defendants as required in order to assert a valid unjust enrichment claim under New York law. The Court will review each of these arguments in turn.

#### 1. The Plaintiffs' Civil RICO Counts

The substantive RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in … interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …" To establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983).

■ RICO defines "racketeering activity" to include certain predicate criminal acts including mail fraud. *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir.1996). The Defendants argue, as a threshold matter, that the Plaintiffs have failed to set forth each Defendant's involvement in mail fraud-the

alleged racketeering activity in this case. A plaintiff asserting a mail fraud claim must show: (1) "the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Id.* at 633.

■ Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake [must] be stated with particularity." Fed. R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.' " *Lerner,* 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).

■ The Plaintiffs have described the allegedly fraudulent scheme, and each Defendant's role in the scheme, in detail. In fact, the complaint includes exhibits detailing the dates and specific instances of fraudulent submissions mailed by the Defendants. The complaint also alleges that each of the Defendants are connected to the scheme such that each defendant could have reasonably foreseen that use of the mail was an essential element of the alleged fraud. *See United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989) (observing that, under the mail fraud statute, the question is not whether each defendant actually used the mail but whether each defendant could have reasonably foreseen that the mail would be used as part of the underlying scheme). Accordingly, the Plaintiffs have met their burden to show that each of the named Defendants committed mail fraud.

Having determined that the Defendants engaged in racketeering activity, the Court's analysis must turn to whether the

Plaintiffs have shown that the Defendants participated in an "enterprise" that is cognizable under RICO. Here, the Plaintiffs assert two theories of enterprise liability under 18 U.S.C. § 1962(c).

### a. Count I

■ The Defendants contend that the Plaintiffs have failed to allege the existence of an "enterprise" within the meaning of RICO. The statute provides that an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). However, under Section 1962(c), it is well-established that the alleged "enterprise" through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994) (finding that the same corporate entity can not be the RICO "person" and the RICO "enterprise" under section 1962(c)).

In Count I, the Plaintiffs have identified the PC Defendants and the Management Companies as the RICO enterprise, and Inna Polack, Alexander Polack, Rozenberg, Goldman, Shvartsman, Kucherovsky, and Robinson as the so-called RICO persons. The Defendants argue that the distinctiveness requirement is not met where a plaintiff alleges a conspiracy between a corporation and its own employees carrying on the affairs of the corporation. However, the Supreme Court has explicitly rejected such an exacting construction of the distinctiveness requirement.

In *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001), a corporate promoter of boxing matches sued boxing promoter

Don King, the president and sole share-holder of Don King Productions ("DKP"), alleging that King had conducted a pattern of racketeering activity through DKP. *Id.* at 161, 121 S.Ct. 2087. The District Court dismissed the plaintiff's complaint finding that it failed to meet the distinctiveness requirement. The Second Circuit affirmed the dismissal holding that "King, in a legal sense, was part of, not separate from, the corporation," and that therefore "there was no 'person,' distinct from the 'enterprise,' who improperly conducted the 'enterprise's affairs.' " *Id.*

The Supreme Court reversed the lower courts, holding that, in such circumstances, the distinctiveness requirement is met because a "corporate owner/employee ... is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Id.* at 163, 121 S.Ct. 2087. The Court was careful to distinguish the facts in *Kushner* from an earlier Second Circuit case, *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994), that the Defendants here rely upon.

In *Riverwoods*, the plaintiffs alleged that the defendant bank had fraudulently coerced them into restructuring loan agreements in violation of RICO. *Id.* at 341. In their complaint, the plaintiffs alleged that the bank was the RICO person and the RICO enterprise was the bank along with its employees and agents. *Id.* The Second Circuit found that the distinctiveness requirement could not be circumvented "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant ..." *Id.* at 344.

■ However, here, as in *Kushner*, the Plaintiffs claim that the corporate officers and employees are the RICO persons while the corporations are the RICO en-terprise. The legal distinction between the RICO enterprise (the PC and Management Company Defendants) and the RICO persons (the officers and employees of those corporations) is sufficient to satisfy the distinctiveness requirement. *See Kushner*, 533 U.S. at 164, 121 S.Ct. 2087 (noting that such a construction of the distinctiveness requirement comports with the statute's aim to protect "the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful ... activity is committed.' ") (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)).

Having determined that the Plaintiffs have alleged a valid RICO enterprise, the Court must analyze whether each of the Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs. 18 U.S.C. § 1962(c). The Supreme Court has held that "to conduct or participate, directly or indirectly, in the conduct" of an enterprise's affairs "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The Supreme Court teaches that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise ..." *Id.* at 179, 113 S.Ct. 1163.

■ At the pleading stage, the Plaintiffs have offered allegations sufficient to show that all of the individual Defendants participated in the alleged enterprise. Here, Inna Polack, Alexander Polack, and Yuliy Goldman are alleged to have been the true owners of the enterprise. The Plaintiffs allege that Rozenberg conducted the en-

terprise's affairs by misdiagnosing patients and performing the unnecessary treatments that drove the fraud. The Plaintiffs further allege that Shvartsman directed the enterprise's affairs by implementing the treatment regimens established by Inna Polack. The Plaintiffs also aver that Kucherovsky participated in the enterprise by laundering the fraudulent proceeds of the alleged scheme. Finally, although the allegations that Robinson participated in the conduct of the enterprise are more tenuous, they are sufficient to state a RICO claim against him because he managed a crucial part of the alleged scheme-steering patients to the PC Defendants.

The Plaintiffs having established all of the requisite elements of a civil RICO claim, the Defendants' motions to dismiss Count I of the complaint are denied.

### b. Count II—The "Innocent Victim Enterprise" Theory

In Count II, the Plaintiffs argue that Allstate—the alleged victim of the racketeering activity—is actually the RICO enterprise. The Supreme Court has observed that "the enterprise in subsection (c) [of § 1962] connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." *Scheidler,* 510 U.S. at 259, 114 S.Ct. 798. Although this conception of a RICO enterprise is rarely invoked, the Supreme Court has not foreclosed the possibility that, under certain circumstances, the victim of racketeering activity could also serve as the RICO enterprise. *See Com–Tech Assoc. v. Computer Assoc. Int'l,* 753 F.Supp. 1078, 1088 (E.D.N.Y.1990) ("Even though the plaintiffs themselves are also the 'enterprise', it is permissible for the victimized enterprise to sue for damages under RICO, so long as it is alleged that the *defendants conducted the enterprise* through a pattern of racketeering activity.") (emphasis added).

To analyze this theory of RICO liability, the Court must again turn to the operation and management test. The Plaintiffs appear to claim that the Defendants conducted or participated in the Plaintiffs' affairs by submitting allegedly fictitious insurance claims that affected the insurance companies' claim-paying process. In the absence of any Second Circuit authority supporting the proposition that such conduct is sufficient to satisfy the "operation and management test," the Plaintiffs lean heavily on the First Circuit's decision in *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546 (1st Cir.1994). In *Aetna,* the First Circuit upheld a jury verdict for an insurer under § 1962(c) against five automobile body shops, their owners, and several Aetna claims adjusters who had engaged in a scheme to submit fraudulent insurance claims.

One of the issues on appeal was whether Aetna, the victim of the fraud, was an enterprise for RICO purposes. The appellants argued that Aetna could not properly be regarded as a RICO enterprise because, among other things, the appellants did not participate in Aetna's operation or management. The First Circuit disagreed finding that "[b]y acting with purpose to cause Aetna to make payments on false claims, appellants were participating in the 'operation' of Aetna." *Id.* at 1559. Crucial to the First Circuit's decision was the fact that several of the named defendants were Aetna claims adjusters who were bribed by their co-defendants into submitting false claims. *Id.* at 1559–60. The First Circuit's reasoning in *Aetna* has not been well received by courts within the Second Circuit. *See Allstate Ins. Co. v. Seigel,* 312 F.Supp.2d 260 (D.Conn.2004); *In re SmithKline Beecham Clinical Lab., Inc. Lab. Test Billing Practices Litig.,* 108 F.Supp.2d 84 (D.Conn.1999).

In *Seigel,* the plaintiff alleged that a doctor and a medical corporation owned by that doctor created fraudulent invoices and medical reports for the purpose of inducing the plaintiff to pay for medical treatments that were never performed. The plaintiff alleged a variety of RICO violations, and contended that it met the distinctiveness requirement because Allstate, and not the named defendant medical corporation, was the relevant RICO enterprise for the purposes of the plaintiff's 1962(c) claim. Although the Court declined to dismiss the plaintiff's RICO claim at the pleading stage, the Court observed that the First Circuit's construction would effectively undermine the operation and management test because "any time a company is defrauded by the conduct of a defendant, one could say that the defendant 'controlled' the company's operations, since absent the fraud, the company would not have done what it did or acted in the manner in which it did." *Seigel,* 312 F.Supp.2d at 275. The Court also noted that "[s]uch a free-wheeling interpretation," of the test was inconsistent with "the more rigorous approach to the operation and management requirement that district courts in the Second Circuit have adopted." *See Id.* (collecting cases).

In *SmithKline,* healthcare insurers and other parties brought suit against a chain of medical laboratories alleging, among other things, that the defendant violated 1962(c) by engaging in a fraudulent billing scheme. 108 F.Supp.2d 84. The plaintiffs argued that one of the RICO enterprises was the hospitals and physicians' offices through which the defendant laboratories sent their allegedly fraudulent bills. The defendant countered that these entities could not serve as the RICO enterprise because none of the defendants actually participated in or conducted these entities' affairs. The Court agreed with the defendants and dismissed the plaintiffs' claim finding that "although [the defendant's] alleged fraudulent billing practices may have victimized the physicians' offices, hospitals, and laboratories, that does not suffice to establish that [the defendant] 'operated or managed' the affairs of each of these alleged enterprises." *Id.* at 100.

■ With due respect, the Court finds the First Circuit's construction of the "operation and management," test to be unpersuasive. However, even if the Court did apply this less stringent version of the test, *Aetna* is clearly distinguishable from the instant case. Significantly, unlike in *Aetna,* here the Plaintiffs do not allege that any of their employees conspired with the Defendants in the alleged scheme. As noted above, the fact that Aetna's claims adjusters were named as defendants for accepting bribes was the linchpin of the First Circuit's finding that the defendants conducted Aetna's affairs in such a way as to make Aetna an enterprise within the meaning of the statute.

Nevertheless, the Plaintiffs contend that Rozenberg and the PC Defendants occupied a unique position of trust as medical providers that gave them an operational or management role in Plaintiffs' decisions regarding the payment of claims. However, it is difficult to see how this position of trust goes to the salient question of whether the Defendants *directed* the Plaintiffs' affairs. See *Reves,* 507 U.S. at 185, 113 S.Ct. 1163 (noting that 1962(c) "cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."); *Redtail Leasing, Inc. v. Bellezza,* 1997 WL 603496, at *4 (S.D.N.Y. Sept. 30, 1997) (observing that the operation and management test is not easily satisfied because "[t]here is a 'substantial difference' between actual control over an enterprise and association with an enterprise in ways that do not

involve control; [and] only the former is sufficient under Reves."). Accordingly, Count II is dismissed because the Plaintiffs have failed to show, under the facts at bar, that Allstate may serve as a RICO enterprise.

#### c. Count III—RICO Conspiracy Under § 1962(d)

The Plaintiffs also allege that the Defendants violated the RICO conspiracy provision. 18 U.S.C. § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 244 (2d Cir.1999). Here, the Plaintiffs have set forth, in considerable detail, an agreement between the various Defendants to violate § 1962(c). Accordingly, the Defendants' motions to dismiss Count III are denied.

#### 2. Count IV—Common Law Fraud

■ "Under New York law, for a plaintiff to prevail on a claim of fraud, he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291 n. 8 (2d Cir.2006). As with their burden to show predicate acts of mail fraud, the Plaintiffs' common law fraud cause of action is subjected to Rule 9's heightened pleading standard.

■ Here, the complaint is replete with well-pleaded allegations that "give rise to a strong inference of fraudulent intent," on the part of the Defendants. *First Capital* *Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 179 (2d Cir.2004). As discussed above in the context of their RICO claim, the Plaintiffs have described the allegedly fraudulent scheme, and each Defendants' role in the scheme, with exacting detail. Indeed, the complaint includes exhibits detailing the dates and specific instances of fraudulent submissions offered by the Defendants. Moreover, the complaint clearly explains the relationship between the mailings and the scheme to defraud. Accordingly, the Plaintiffs have alleged a fraudulent scheme with the requisite particularity and the Defendants' motions to dismiss Count IV are denied.

#### 3. Count V—Deceptive Business Practices Under N.Y. Gen. Bus. L. § 349

■ Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service ..." *Davis v. Blige,* 505 F.3d 90, 96 n. 8 (2d Cir.2007). "To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are 'consumer oriented,' (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts." *DePasquale v. Allstate Ins. Co.,* 179 F.Supp.2d 51, 58 (E.D.N.Y.2002) (citations omitted).

■ "The consumer oriented prong of the Section 349 claim requires a plaintiff to show that the practices complained of have a 'broad impact on consumers at large ...'" *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741 (N.Y.1995)); *see Exxonmobil Inter–America, Inc. v. Advanced Information Eng'g,* 328 F.Supp.2d 443, 449 (S.D.N.Y.2004) ("Section 349 liability does not lie where the disputed private transac-

tion does not have 'ramifications for the public at large.'") (citation omitted). An action under Section 349, unlike a claim for common law fraud, is not subject to the heightened pleading requirement of Rule 9(b) and "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005).

■ Here, the Defendants argue that the alleged deceptive practices were not consumer-oriented within the meaning of the statute. However, this is a close question and the Court declines to find, as a matter of law, that the Plaintiffs are unable to state a claim under Section 349. The fact that the Defendants' alleged scheme would almost certainly result in higher premiums for insurance consumers is sufficient, at this stage, to show that the alleged fraud had "ramifications for the public at large". Accordingly, the Defendants' motions to dismiss Count V are denied.

#### 4. Count VIII—Unjust Enrichment

■ "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey*, 448 F.3d 573, 586 (2d Cir.2006) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.2000)). Here, the Plaintiffs have adequately set forth a plausible unjust enrichment claim. If the allegations contained in the complaint are true, then there is no question that the Defendants reaped financial benefits at the Plaintiffs' expense and that equity would require the Defendants to make restitution under such circumstances. Accordingly, the Defendants' motions to dismiss Count VIII are also denied.

### III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendants' motions to dismiss Count II are **GRANTED,** and it is further

**ORDERED,** that the Defendants' motions to dismiss Counts I, III, IV, V, and VIII are **DENIED.**

**SO ORDERED.**